### In re INCORPORATION OF VILLAGE OF WEBSTER.

(Supreme Court, Appellate Division, Fourth Department. March 1, 1905.)

VILLAGES—INCORPORATION—ELECTIONS—CANVASS.

Village Law, § 11 (Laws 1897, c. 414; p. 370), provides that inspectors of an election to determine the question of incorporation of a village shall possess all the powers conferred by law on the board of election inspectors at a town meeting, so far as the same is applicable; and section

14 requires that immediately after the closing of the polls the board of inspectors shall canvass the ballots. Election Law, § 110 (Laws 1896, p. 960, c. 909), declares that, in case the ballots found in any box shall be more than the number of ballots shown by the pollbook to have been deposited, the inspectors shall thoroughly mingle the ballots, and one of them shall publicly draw out as many ballots as shall equal such excess, and destroy them, without unfolding. The town law also directs that, in the canvass of votes, like proceedings shall be had as to ballots folded together, and difference in number, as are prescribed in the general election law. *Held*, that where, on an election for the incorporation of a village, 109 ballots were found in the box, while the poll list showed that only 107 persons had voted, and it was also discovered that 2 of the ballots were folded together, showing that they had been deposited by the same person, a certification that 107 ballots were cast, of which 54 were for incorporation and 53 against, was erroneous, as it was the duty of the inspectors to reject the 2 ballots folded together, and then to draw out a third, to make the number of ballots comply with the registration list.

Appeal from Special Term, Monroe County.

Proceedings for the incorporation of the village of Webster. From a judgment sustaining the canvass of an election held on the proposition for incorporating the village, resulting in a declaration by the board of canvassers that the proposition for the incorporation was carried, objectors appeal. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Forsyth Bros., for appellants.

Barrett & Allen, for respondent.

STOVER, J. The supervisor and town clerk of the town, acting as inspectors of election, filed a certificate of the canvass of the ballots cast, showing 109 ballots cast, of which 54 were "For Incorporation," and 53 "Against Incorporation," and that 2 of the ballots with the words "For Incorporation" thereon were rejected, leaving a majority of 1 in favor of the proposition. When the polls were closed, the poll list showed that 107 persons had voted. The ballots cast were counted without unfolding, and 106 were found. A second count was made, with like result. The ballots were then unfolded. During the process of unfolding, 2 ballots for incorporation were found folded together; that is, they had been folded together in the act of folding, and had therefore been cast by one person. One of these was laid aside by the inspectors. Another ballot, in which the printed word "Against" was marked off, and the word "For" written in its stead, was also laid aside. When the remaining ballots were counted and canvassed, there were found to be 107, of which 54 were for the proposition, and 53 against it. It thus appears that there were 109 votes in the box—an excess of 2 over the poll list.

Section 11 of the village law (chapter 414, p. 370, of the Laws of 1897) provides that the inspectors "shall possess all the powers conferred by law upon a board of inspectors of election at a town meeting so far as the same is applicable"; and section 14 provides:

"Immediately after the closing of the polls of the election the board of inspectors shall canvass the ballots cast thereat, and shall make and sign a

certificate * * * showing the whole number of such ballots, the number for incorporation and the number against incorporation."

Section 110 of the election law (Laws 1896, p. 960, c. 909) prescribes the proceedings in case the ballots found in any box shall be more than the number of ballots shown by the pollbooks to have been deposited, and provides that the inspectors shall thoroughly mingle the ballots, and that one of the inspectors designated by the board "shall, without seeing the same and with his back to the box, publicly draw out as many ballots as shall be equal to such excess and without unfolding them, forthwith destroy them." The town law directs that in the canvass of votes "like proceedings shall be had as to ballots folded together; and difference in number as are prescribed in the general election law."

It is contended by the appellant that the effect of section 11 of the village law is to require the same proceedings as obtain in town elections, and, as in town elections the same proceedings are to be had whenever it appears that the ballots cast exceed the number shown by the poll list as in a general election, therefore, under the provisions of section 11, the inspectors should have followed the rule as laid down in the general election law.

The statute is not explicit; it confers the same powers upon those having charge of the canvass as in general elections; and it may be well said that, conferring no greater power, they would have no greater right to act in any manner than the inspectors or persons in charge of a town canvass. But above this, it is the province of the court to determine whether the result certified is a fair expression of the people, and therefore it is proper that we should consider the situation with the view of determining this fact, namely, does the canvass, as certified, fairly express the will of the people?

The procedure followed at town meetings as required by the statute, in order to make the ballots counted conform to those shown on the pollbooks, seems to be a fair manner of determination, and has been followed in all elections for many years. There can be no question that 107 persons voted at this election. It appearing that 2 ballots were found folded together, there was a presumption that they had been cast by the same person, and that therefore the vote of that person was illegal. This is recognized by the general election law, and with good reason. It being once shown that 2 ballots, instead of 1, were deposited by a voter, his vote was presumptively fraudulent, and therefore the ballots were to be rejected, under the law. This presumptively fraudulent vote —there being an excess of 2 ballots over the number shown by the poll list—would apparently show that there were 3 illegal votes cast. As there were 109 ballots, this would reduce the legal ballots to 106. But the canvassers have certified that there were 107 ballots cast, and, in order to sustain the result of the canvass as certified, it is necessary to count 54 votes in favor of the proposition, as there were 53 votes against it. If there were 2 illegal votes—that is, 2 more than appeared upon the list—and 1 of the ballots cast by somebody whose name appeared upon the list was fraudulent, in

that 2 ballots were folded together, there would have been 3 ballots to be rejected, leaving 106 legal voters upon the proposition. This would result in a tie, and the incorporation would have been defeated.

The county judge recognized the fact that the canvassers had possibly proceeded in an irregular manner in the count, but arrived at the conclusion that the result would have been the same, had they performed their duties as the law directs; but we are not quite satisfied with this result. It may be possible that the folded ballot and the surplus ballots may have been so united as to preserve 107 legal votes, but this is not quite clear; and we think the argument that there were 2 surplus ballots and an illegal ballot is quite as strongly supported as the other theory. At all events, it is not clearly shown that the canvass as certified is a correct statement of the result of the election. The argument in favor of the canvass is that, destroying the 2 ballots folded together, there would still be left 107 ballots; but, as we have seen, it might be quite possible that the 2 ballots in excess of the number appearing upon the poll list might have been cast by some other than the person casting the 2 folded together. So that, if the surplus ballots of 2 were to be rejected, the other ballot is not counted, because being cast by a person entitled to cast but 1 ballot, but who had cast 2. It is rejected for an entirely different reason than those which appear as surplus ballots. It is true that in the destruction of the surplus ballots there is no purpose of getting at the destruction of the actual excess votes cast, because that is an impossibility; but it is a method of reaching a determination of a question in a practical way, and in as fair a method as probably can be devised. But as above stated, the ballots folded together are rejected because of a presumptive fraud, and the rejection should be of both ballots, and destroys the vote of one person; and therefore it is impossible for us to say that in the certificate of the canvassers the true result of the election is stated, for, if two ballots had been drawn from the box before the canvass, upon the discovery of the ballots folded together they would have to be rejected, and possibly there would have been no majority in favor of the proposition.

We think the inspectors erred in the declaration of the result, and the judgment should be reversed.

The decision of the county judge should be reversed, and the election set aside, without costs to either party on appeal. All concur.